IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03155-NRN

PAUL GANGEMI,

Plaintiff,

v.

AMF BOWLING CENTERS, INC. d/b/a BOWLERO CHERRY CREEK,

Defendant.

---

**ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. #35)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on Defendant AMF Bowling Centers, Inc.'s ("Bowlero") Motion for Partial Summary Judgment. Dkt. #35. Plaintiff Paul Gangemi filed a response. Dkt. #44. Bowlero filed a Reply. Dkt. #49. The Court heard argument on the Motion on February 2, 2024. The matter is set for a four-day jury trial starting March 25, 2024. The matter will be tried before this Magistrate Judge per the consent of the Parties and on Order of Reference by Chief Judge Philip A. Brimmer dated March 17, 2023. *See* Dkt. #24.

## Background

Mr. Gangemi alleges that on February 5, 2022, he was at a bowling alley owned and managed by Bowlero near the Cherry Creek neighborhood of Denver, Colorado. Mr. Gangemi ordered a beverage from a Bowlero employee, who served Mr. Gangemi and his friends a pitcher of beer and upright glasses stacked on top of each other. Mr.

Gangemi alleges he had a shard of glass break into his beer. Mr. Gangemi drank from the contaminated vessel and ingested the slice of glass, which is alleged to have become lodged in his distal sigmoid colon, causing epigastric abdominal pain, stomach pain, and post-traumatic stress disorder.

Mr. Gangemi filed his Complaint in Colorado state court on November 9, 2022, asserting two claims against Bowlero: 1) violation of the Colorado Premises Liability Act ("CPLA"), Colo. Rev. Stat. § 13-21-115; and 2) strict liability—breach of implied warranty of merchantability. *See* Dkt. #6.

The matter was removed to this Court via a Notice of Removal filed on December 6, 2022. *See* Dkt. #1.

Bowlero has moved for partial summary judgment on Mr. Gangemi's second claim for relief: strict liability—breach of implied warranty of merchantability. In that claim, Mr. Gengemi asserts that Bowlero served him a beverage that had a defective condition, "rendering it unreasonably dangerous to the consumer." The act of selling a beverage that included a glass shard is alleged to have breached the implied warranty of merchantability that attaches to products (including food products) sold by merchants.

Bowlero's argument for summary judgment on this second claim is that Mr. Gangemi's claims against it are exclusively governed by the CPLA, which preempts Mr. Gangemi's alternative claim for breach of the implied warranty of merchantability.

For purposes of this motion, there is no dispute that Bowlero owned and managed the bowling alley premises where the incident occurred, and Bowlero was a "landowner" of the premises as set forth in Colo. Rev. Stat. § 13-21-115(1). Neither is there any dispute that Bowlero was responsible for maintaining the premises, which

2

included maintaining the premises in a safe condition and adequately training and supervising its employees regarding the safe and lawful service of food and beverages.

## Legal Standard

"[S]ummary judgment is a drastic remedy and is not a substitute for a trial of disputed facts." *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 718 (Colo. 1987). Because the trial court may not assess the weight of the evidence or credibility of witnesses in determining a motion for summary judgment, the Court should not grant summary judgment when there is a controverted factual issue that must be resolved in a trial. All doubts regarding the evidence must be resolved against the moving party, and the party against whom the motion is made is entitled to all favorable inferences that reasonably may be drawn from the evidence. *Id.* (citations omitted).

That said, the issue raised by Bowlero's partial motion for summary judgment is not a fact issue. It is a question of law: whether the CPLA is the exclusive remedy for a plaintiff allegedly injured under circumstances such as this—where a "landowner" (within the meaning of the CPLA) sold a product meant for human consumption on site, and the plaintiff-purchaser is injured by ingesting the allegedly defective or dangerous product. Thus, to the extent there may be factual questions to be determined at trial, those factual issues are not material to the legal question of the viability of the claim for breach of the warranty of merchantability.

## Analysis

The CPLA "delineates duties owed by landowners to third persons who enter on the land under circumstances that cause those persons to be categorized as

3

trespassers, licensees, or invitees." *Trailside Townhome Ass'n, Inc. v. Acierno*, 880 P.2d 1197, 1202 (Colo. 1994) (en banc).

> The statute applies to a personal injury action that meets four requirements: (1) the action involves the plaintiff's entry on the landowner's real property; (2) the plaintiff's injury occurred while on the landowner's real property; (3) the injury occurred by reason of the property's condition, activities conducted on the property, or circumstances existing on the property; and (4) the landowner breached the duty of care it owed the plaintiff under the premises liability statute's classification of trespasser, licensee, or invitee.

*Larrieu v. Best Buy Stores, L.P.*, 303 P.3d 558, 562 (Colo. 2013).

The CPLA was enacted to "protect landowners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies set forth" in the statute. Colo. Rev. Stat. § 13-21-115(1.5)(e). Thus, the "overriding purpose of the premises liability statute is to clarify and to narrow private landowners' liability to persons entering their land. . . . General negligence law would not provide such protection." *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1219 (Colo. 2002) (en banc) (internal citations omitted); *see also Danielson v. Wal-Mart Stores, Inc.*, No. 06-cv-00053-EWN-PAC, 2006 WL 2385215, at *2 (D. Colo. Aug. 17, 2006).

Subsection (2) of the CPLA states:

> In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of this section.

Colo. Rev. Stat. § 13-21-115(2). The Colorado Supreme Court has determined that "[t]he express, unambiguous language of subsection (2) . . . evidences the General Assembly's intent to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property," and "it's intent to completely occupy

4

the field and supercede the existing law in the area." *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004). Moreover, the language of subsection (2), "coupled with the precisely drawn landowner duties in subsection (3), leaves no room for application of common law tort duties." *Id*. "[A] plaintiff may recover against a landowner only as provided under the statute, and not under any common law theory." *Wilson v. Marchiondo*, 124 P. 3d 837, 840 (Colo. App. 2005).

The statute defines a "landowner" as a "person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." Colo. Rev. Stat. § 13–21–115(1). Here, the Complaint alleges that the injury occurred on property—the bowling alley—owned by Bowlero, and that Mr. Gregami was an invitee under the CPLA.

The Colorado Supreme Court has determined that the CPLA "applies to conditions, activities, and circumstances on the property that the landowner is liable for in its legal capacity as a landowner." *Larrieu*, 303 P.3d at 559 (finding the CPLA applied to claim for injuries resulting from conduct by an employee in helping load a refrigerator in a Best Buy store parking lot). However, liability under the statute is neither "restricted solely to activities and circumstances that are directly or inherently related to the land," nor extended to "any tort that happens to occur on another's property." *Id*. "This analysis necessitates a fact-specific, case-by-case inquiry into whether: (a) the plaintiff's alleged injury occurred while on the landowner's real property; and (b) the alleged injury occurred by reason of the property's condition or as a result of activities conducted or circumstances existing on the property." *Id*. As the Colorado Supreme Court said in *Larrieu*,

5

> [I]f the General Assembly intended the statute to govern all tortious activity that occurs on the land of another, it would have simply said so and would not have included the language of section 13–21–115(2) at issue here, which limits the statute's scope to injuries caused by "the condition of [the landowner's] property, or activities conducted or circumstances existing on such property."

*Id.* at 564.

Importantly, it also appears that the CPLA provides preemption for common law claims, but not statutory ones. *See Vigil*, 103 P.3d at 328 ("[T]he plain language [of the CPLA] preempts prior common law theories of liability."); *Tavernetti v. Coogan*, No. 20-cv-00853-STV, 2020 WL 5321274, at *4 (D. Colo. Sept. 4, 2020) (dismissing common law claims asserted for mold exposure in home based on the CPLA but a claim based on statutory breach of warranty of habitability to proceed). Indeed, a close reading of the Colorado Supreme Court's decision in *Vigil* makes clear that the scope of preemption of the CPLA is extended to all common law, but not statutory, claims. *See Vigil,* 103 P.3d at 328 (CPLA "leaves no room for application of *common law tort* duties") (emphasis added); *id.* (statute's "definition of landowner duty is complete and exclusive, fully abrogating landowner *common law duty principles*") (emphasis added); *id.* ("The operational mechanism of the statute further demonstrates the General Assembly's intent to preempt *common law tort duty analyses.*") (emphasis added); *id.* at 329 (quoting 7 John W. Grund & Kent Miller, *Colorado Personal Injury Practice—Torts and Insurance* §§ 19.1 for proposition that "[d]ecades of evolution in the *common law* were swept aside by 1986 House Bill 1205 [the premises liability statute]. That legislation changed the rules to such an extent that Colorado appellate decisions based upon *common-law principles* are of little or no authority for claims subject to the new legislation) (emphases added); *id.* ("our analysis of the premises liability statute

convinces us that the General Assembly clearly and manifestly expressed its intent, through the plain language of the statute, to abrogate the *common law* of landowner duties") (emphasis added). It is not apparent that in passing the CPLA, the General Assembly was also seeking to eliminate other statutory rights established to protect consumers or purchasers of goods.

Beyond the CPLA claim, Mr. Gangemi is asserting a statutory claim for a breach of the warranty of merchantability for the sale of beer contaminated with the glass shard. This is a claim under a section of Colorado's version of the Uniform Commercial Code, Colo. Rev. Stat. § 4-2-314. That provision reads, in relevant part:

> (1) Unless excluded or modified (section 4-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section, *the serving for value of food or drink to be consumed either on the premises or elsewhere* is a sale.
>
> (2) Goods to be merchantable must be at least such as:
>
> . . .
>
> (c) Are fit for the ordinary purposes for which such goods are used.

Colo. Rev. Stat. § 4-2-314. This provision has been recognized as the basis for claims against restaurants or others who sell contaminated food or beverages. *See* Jordan Lipp and Ed Hafer, *What's in the Package: Food, Beverage and Dietary Supplement Law and Litigation—Part I*, 43-Jul *Colo. Law*. 77, at *81–82 and n.103 (July 2014) (noting that the breach of the implied warranty of merchantability is the implied warranty claim "most commonly applicable to food litigation," and citing C.J.I. § 14:12 as setting forth a separate jury instruction regarding food under the breach of the implied warranty of merchantability). A report of a Colorado jury verdict against the Pappadeaux seafood chain suggests that it is entirely appropriate to bring a statutory claim for breach of the

7

implied warranty of merchantability against a restaurant when it sells a contaminated, dangerous beverage to a patron. *See Lacriox v. Beverage Distrib. Co. and Pappas Restaurants, Inc.,* 2013-cv-030280, JVR No. 1412170045, 2014 WL 7184283 (Adams Cnty. Dist. Ct., Colo.). That jury verdict report recounts that a patron at Pappadeaux's restaurant suffered Grade 2 burns to his esophagus and caustic injuries to his stomach after being served a beer containing sodium hydroxide/lye—the chemical used to clean the tap line. A jury awarded $200,000 in damages against the restaurant for breach of the implied warranty of merchantability.

It makes sense that injury resulting from the sale of tainted or contaminated food or beverages by a restaurant or bar would give rise to a different kind of claim from a claim against a landowner for activities conducted on the property. The UCC provision creating an implied warranty of merchantability is intended to protect purchasers from dangerous or unfit products. This is entirely different from the policy objectives the General Assembly was trying to balance in passing the CPLA. *See Larrieu*, 303 P.3d at 565 (explaining the General Assembly's stated purposes of "promoting . . . responsibility by both landowners and those upon the land" and "creating a legal climate which will promote private property rights and commercial enterprise and will foster availability and affordability of insurance," coupled with the intent to "protect landowners from liability in some circumstances when they were not protected at common law").

In this instance, and with respect to the implied warranty of merchantability claim, the allegation is that the tainted beverage sold by Bowlero caused the injury. As far as this claim goes, the injury was not a result of "the condition of the landowner's property, or activities conducted or circumstances existing on such property." *Larrieu*, 303 P.3d at

564 (brackets omitted). Therefore, because the breach of the implied warranty of merchantability is a statutory claim, not a common law claim, and because the injury was not alleged to have been caused by activities conducted, or circumstances existing on, the Bowlero property, the Court will deny Bowlero's motion for partial summary judgment.

## Order

It is hereby **ORDERED** that Defendant's Motion for Partial Summary Judgment (Dkt. #35) is **DENIED**. This case will go forward on Plaintiff's two claims: 1) violation of the Colorado Premises Liability Act, Colo. Rev. Stat. § 13-21-115, and 2) strict liability—breach of implied warranty of merchantability.

Dated:   March 7, 2024
         Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge